UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

**DAWN-MICHELE BLALOCK,**

      Plaintiff,

vs.                                **CASE NO.:**

**PARTNERS PHARMACY, L.L.C., a Domestic Limited Liability Company, ASCEND HEALTH LLC, a Domestic Limited Liability Company, CARE ALTERNATIVES INC., a Domestic Profit Corporation d/b/a ASCEND HOSPICE; and DANIEL E. STRAUS, Individually**

      **Defendants.**      /

**COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff DAWN-MICHELE BLALOCK ("Plaintiff"), through undersigned counsel, files this Complaint against Defendants PARTNERS PHARMACY, L.L.C., a Domestics Limited Liability Company ("PARTNERS"), ASCEND HEALTH LLC, a Domestics Liability Company ("ASCEND") and CARE ALTERNATIVES INC., a Domestic Profit Corporation d/b/a ASCEND HOSPICE ("CARE ALTERNATIVES") and DANIEL STRAUS, individually, ("Mr. Straus") or collective hereby referred to as "Defendants"), and states as follows:

**NATURE OF THE ACTION**

1. This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, by the Civil Rights Act of 1991, 42 U.S.C. 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act ("ADEA") and also for violations of the N.J. Stat. Ann. § 10:5-1 to 10:5-49, the New Jersey Law Against Discrimination ("NJLAD") and N.J. Stat. Ann. §34:11B-9, New Jersey's Conscientious Employee Protection Act ("CEPA") to recover front pay,

back pay, reinstatement, lost benefits, compensatory damages, emotional distress damages, pain and suffering damages, liquidated damages, injunctive relief, reasonable attorneys' fees and costs and any other relief to which the Plaintiff is entitled including but not limited to equitable relief.

## THE PARTIES

2. Venue is proper as the acts and omissions giving rise to Plaintiff's claims occurred in Union County, New Jersey.

3. At all times pertinent hereto, Plaintiff, DAWN-MICHELE BLALOCK, has been a resident of the State of North Carolina and was jointly employed by Defendants on a primarily remote basis, as a Chief Strategy Officer and later as Interim Chief Operating Officer, from May 3, 2021 to November 14, 2022. Plaintiff is a member of a protected class she is a female, she is over the age of forty and because she objected to Defendants' discriminatory practices and violations of various laws, rules, and/or regulations and became the victim of discrimination/retaliation thereafter.

4. At all times material to this action, PARTNERS PHARMACY, L.L.C., a Domestic Limited Liability Company engaged in business in New Jersey, with its principal place of business in Union County. Specifically, Defendant operates at 50 Lawrence Road, Springfield Township, NJ 07081.

5. At all times material to this action, ASCEND HEALTH LLC, a Domestic Limited Liability Company, was, and continues to operate providing home health care, palliative care and hospice care to their communities. Specifically, Defendant corporate operates at 65 Jackson Drive, Suite 103, Cranford, NJ 07016.

6. At all times material to this action, CARE ALTENATIVES INC., a Domestic Profit Corporation, d/b/a ASCEND HOSPICE, was, and continues to be, a Foreign Profit Corporation

operating as a health and rehabilitation center. Specifically, Defendant operates at 6300 46th Avenue North, Saint Petersburg, FL 33709.

7. At all times material to this action, Daniel E. Straus, individually, owns, operates and controls all of the above-mentioned corporate entities and was directly and/or indirectly involved in all of the discriminatory and retaliatory conduct which form the basis of Plaintiff's claims against Defendants. Mr. Straus is a citizen of the State of New Jersey and resides in Fort Lee, New Jersey.

8. Defendants share common executive control, common assets, human resources department, payroll systems, accounting personnel, managers, directors, and provide benefits under a common policy.

9. Defendants PARTNERS, ASCEND HEALTH and CARE ALTERNATIVES have joined and combined to form and constitute a joint employer and/or single enterprise by:

(a) performing related activities;

(b) exercising unified operation or common control over Plaintiff by common ownership;

(c) operating for a common business purpose under common ownership/control;

(d) jointly controlling Plaintiff's day-to-day work assignments, the manner in which her work was performed and setting her schedule;

(e) Defendants had the right to hire, fire, or modify the employment conditions of Plaintiff's employment;

(h) PARTNERS, ASCEND HEALTH and CARE ALTERNATIVES acted directly or indirectly in the interest of each other with respect to the Plaintiff;

  (i) PARTNERS, ASCEND HEALTH and CARE ALTERNATIVES are not completely disassociated with respect to the employment of Plaintiff, and may be deemed to share control of the Plaintiff, directly or indirectly, by reason of the fact that they are common ownership and institutional/corporate control; and

  (j) Defendants failed to observe corporate formalities and structure on numerous levels including for instance its officers, directors and management routinely were shuffled around to different positions amongst Defendants' web of corporations without any regard to corporate formalities.

10. Defendants' owner (Mr. Straus), officers, directors and/or managers were ultimately in a position of authority over the business decisions that led to the violations.

11. At all relevant times, PARTNERS, ASCEND and CARE ALTERNATIVES, and Mr. Straus jointly employed the Plaintiff.

## **JURISDICTION AND VENUE**

12. Jurisdiction of this matter arises under 28 U.S.C. §1331 with federal questions involving Title VII. An express grant of federal court jurisdiction over this federal claims is found in Title VII at 42 U.S.C. §2000e-5(f)(3). There is also diversity jurisdiction under 28 U.S.C. § 1332 because this case involves citizens of different states and the amount in controversy exceeds $75,000. Jurisdiction over state law claims also arise under the Court's supplemental jurisdiction 28 U.S.C. § 1367.

13. This Court has jurisdiction over Plaintiff's claims because, at all times material to this Complaint, Plaintiff worked for Defendants who are generally located in Union County.

14. The illegal conduct complained of and the resultant injury occurred within the judicial district in and for Union County, New Jersey.

## TITLE VII/NJLAD/CEPA PREREQUISITES

15. Plaintiff is a female person over the age of 40 who suffered discrimination based on her sex and age (over 40). As such, she is a member of a class of individuals protected by Title VII and the ADEA.

16. Plaintiff was qualified for her position of employment.

17. Plaintiff suffered an adverse effect upon her employment by being terminated by Defendant with the motivating or determinative factor used by Defendant was because of her sex and/or her age and/or because she was retaliated against for objecting to a violation of law by Defendants.

18. All conditions precedent to bringing this action have occurred.

19. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC").

20. After investigating Plaintiff's Charge of Discrimination, the EEOC issued a right-to-sue letter April 18, 2023. Therefore, this Complaint is being filed within 90 days of Plaintiff receiving the right to sue letter.

21. Jurisdiction over this claim is appropriate over the NJLAD and CEPA because there are no administrative pre-requisites prior to filing these claims.

## STATEMENT OF FACTS

22. Plaintiff began working for Defendants from May 3, 2021, until her unlawful termination on November 14, 2022. At the time of her termination, Plaintiff was the Defendants' Chief Strategy Officer.

23. During Plaintiff's tenure, she was a model employee, who worked diligently to boost the morale of the Respondent's employees and to improve its financial performance.

24. Plaintiff was actively engaged with Defendants' ownership (Mr. Straus) and management and did not receive a single write-up or verbal warning prior to her termination.

25. Plaintiff was promoted and given a raise on March 8, 2022, only to have her promotion and raise later unlawfully rescinded prior to her termination for discriminatory and retaliatory reasons.

26. Plaintiff was originally hired as Chief Strategy Officer for Ascend Heath. On or around March of 2022, Mr. Spero was unexpectedly fired from his multiple positions within the Defendants' web of corporate entities.

27. As a result, Plaintiff was asked to fill the void created by this sudden termination and become the Interim Chief Operating Officer for Ascend and Partners Pharmacy, including Avantum, its hospice pharmacy division ("Partners").

28. At this point, Daniel Straus' son-in-law, David Baruch (who was then the putative Associate General Counsel of Defendants, but had no executive management experience), began overseeing Plaintiff without any announcement or clarity of his role.

29. As Plaintiff became acquainted with the general financial condition of Partners, it became evident that an aggressive turnaround strategy was required and that was communicated to Mr. Straus.

30. On or around the end of April 2022, at an executive meeting held in the Company's offices in Fort Lee, New Jersey, Plaintiff was told by Mr. Straus in front of the entire Company executive team that the "honeymoon is over."

31. Plaintiff was then called into a separate meeting with Mr. Straus and Mr. Baruch during which Mr. Straus proceeded to yell at Plaintiff and bang on the table for 20 minutes, and then summarily dismissed Plaintiff.

32. Even Mr. Baruch stated "Wow, that was rough" to her immediately following Mr. Straus' tirade. This episode occurred only after Plaintiff had communicated a savings summary to Mr. Straus demonstrating $1.2 million in savings to be carried out in the next 90 days.

33. Plaintiff had also discovered numerous operational issues within Partners and had identified proposed solutions, but Mr. Straus viewed this all negatively.

34. Mr. Straus' unwieldy and shocking behavior continued in May of 2022, where he became more irate, demeaning and rude towards Plaintiff and others.

35. Mr. Straus was also upset with Jim Matthews about the performance of APS, another affiliate of Partners, and demanded Plaintiff to cease all sales of APS products except to the Straus-owned Care One buildings.

36. At that time, Mr. Straus also terminated Dr. Amina Ahmed (Chief Medical Officer of Care One) and Antoinette Loyas (EVP of Operations for Care One) without cause.

37. The difficulties with Mr. Straus continued with Plaintiff and the rest of the executive team over the next few months.

38. On July of 2022, Mr. Strauss sold his Care One buildings located in Connecticut, which reduced Partners revenue by approximately $500,000 per month.

39. Plaintiff, as the Interim COO, was never even consulted about the sale and only found out when Partners received a termination notice for existing contracts with those buildings.

40. This occurrence effectively undermined the efforts Plaintiff had implemented to stabilize Partners' deteriorating financial condition.

41. At a meeting on or about August 11, 2022, Plaintiff was called "useless" and "pathetic" by Mr. Straus in front of her peers, then the subsequent day was told by Emily Vazquez (newly appointed to the Company's executive team under questionable circumstances discussed

below) and Mr. Baruch by phone that Plaintiff would not be at Partners anymore and would instead start working back at Ascend.

42. An announcement stating the new leadership of the Defendants (including Ms. Vazquez as Senior Vice President of Special Projects) was immediately circulated.

43. Plaintiff's salary, which had been increased when she assumed her duties as Interim COO, was reduced to her original salary.

44. Simultaneously, Mr. Baruch's salary was increased substantially without taking on any new responsibilities.

45. It is well known within the company (and confirmed by Ms. Vazquez) that she is engaged in an intimate personal relationship with Daniel Straus.

46. Critically, on August 17, 2022, Plaintiff received a text message from an unknown number containing a letter sent on June 25, 2022, to the Company, Mr. Straus, Company compliance officers and various regulatory agencies documenting a situation involving the illegal diversion of narcotics by Ms. Vazquez from a building in Massachusetts over which she acted as licensed administrator.

47. Plaintiff then confirmed the veracity of the statements in that letter through a check of court records in Newton, Massachusetts.

48. In the wake of these astonishing events, Ms. Vazquez was removed from her position in the building where the crimes occurred and *promoted* to a senior management position within the Company.

49. As Interim COO of Partners at the time of Ms. Vazquez's illegal activity, Plaintiff was justifiably concerned about the potential liability or responsibility to Partners or to Plaintiff

individually, as the COO, and on August 22, 2022, raised those concerns in a confidential communication with the Company's General Counsel, Ricardo Solano.

50. In that same communication, Plaintiff requested that she be indemnified from any legal consequences of Ms. Vazquez's actions. However, the questions and concerns of illegal conduct/liability stemming from same raised in that communication by Plaintiff were ignored.

51. In the meantime, Plaintiff was making good progress at Ascend. In fact, Plaintiff put several employee-centric programs in place to reward key employees and to drive a cultural shift in the organization towards excellence.

52. Without warning, on November 10, 2022, Plaintiff was emailed by David Baruch and General Counsel Ricardo Solano, requesting that she come to Fort Lee for a meeting.

53. On November 11, 2022, Plaintiff was texted by Mr. Solano to give him a call and on that call, he told Plaintiff that she was going to be "separated from Ascend."

54. Plaintiff was then terminated on November 14, 2022, without any good reason within 90 days of Plaintiff complaining about the CEO's romantic relationship with Ms. Vazquez, her promotion at Partners and her illegal activities implicating Partners.

55. To add insult to injury, Plaintiff was replaced by Derek Corriveau, a much younger male with absolutely no senior executive experience.

56. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendants should be made to pay said fee under the laws set forth below.

## COUNT I
## VIOLATION OF NEW JERSEY'S CONSCIENTIOUS EMPLOYEE PROTECTION ACT ("CEPA"), N.J. STAT ANN. §34:11B-9 AS TO DEFENDANTS

57. Plaintiff re-alleges and incorporates all allegations contained within Paragraphs 1

through 56, above, as if fully set forth herein.

58. New Jersey Statute §34:19-3 expressly provides that an employer may not take any retaliatory action against an employee because the employee "objects to, or refused to participate in, any activity, policy, or practice of the employer which the employee reasonably believes is in violation of a law, rule, or regulation."

59. At all times material to this action, Plaintiff was an employee of Defendants within the meaning of New Jersey Statute §34:19-2(b).

60. At all times material to this action, Defendants were the "employer" within the meaning of New Jersey Statute §34:19-2(a) and regularly employed more than ten (10) persons.

61. Defendants violated New Jersey Statute §34:19-3 by taking retaliatory personnel actions against Plaintiff and by terminating her because of her complaints to Defendants which she reasonably and in good faith believed to be violations of various New Jersey and federal laws and/or were violations of New Jersey and Federal laws, including, but not limited to the New Jersey Law Against Discrimination, nursing home/pharmacy regulations and state/federal criminal statutes related to the illegal possession, use or control of controlled substances by Ms. Vazquez.

62. Defendants and/or its agents, managers, and supervisors actively and knowingly participated in the retaliatory actions taken against Plaintiff having actual knowledge and/or constructive knowledge of the wrongfulness of their conduct and the high probability that injury and/or damage to Plaintiff would result, and/or acted with such reckless disregard for, or with an absence of reasonable care, as to constitute a conscious disregard for, or indifference to, Plaintiff's statutorily protected rights, and/or acted with such gross negligence that Defendants contributed to Plaintiff 's damages, injuries, and losses.

63. As a direct, proximate, and foreseeable result of Defendants' actions, Plaintiff has suffered past and future pecuniary losses, lost wages, back pay, front pay, emotional pain, suffering, punitive damages, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, severe emotional distress, humiliation, and other non-pecuniary losses and intangible injuries.

## COUNT II
## DISCRIMINATION BASED ON AGE IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION ("NJLAD")

64. Plaintiff re-alleges and incorporates all allegations contained within Paragraph 1 through 56, above, as if fully set forth herein.

65. Defendants' acts were intentional, with malice, and in violation of Plaintiff's protected civil rights under the New Jersey Law Against Discrimination ("NJLAD").

66. Plaintiff has been damaged and continues to be damaged by Defendants' illegal conduct and discriminatory actions based on her age (51 years old) and her sex (female) at the time of her termination.

67. Plaintiff was treated less favorably than other similarly-situated younger male employees of Defendants and in comparison to other employees in similar circumstances who were younger than Plaintiff both in the terms and conditions of her employment as well as with respect to her demotion/termination of employment.

68. Plaintiff was also treated less favorably than other similarly-situated females because she brought attention to and participated in an investigation regarding an inappropriate romantic relationship between Mr. Straus and Ms. Vazquez.

69. The above discrimination was done by Defendants with a reckless disregard for Plaintiff's rights under federal and state laws.

70. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

**WHEREFORE**, Plaintiff DAWN-MICHELE BLALOCK prays for a trial by jury and all legal and equitable relief allowed by law including:

a. Back pay and benefits;

b. Interest on back pay and benefits;

c. Front pay and benefits and/or lost earning capacity;

d. Compensatory damages for emotional pain and suffering;

e. Injunctive relief;

f. Prejudgment interest;

g. Punitive damages;

h. Costs and attorney's fees; and

i. Such other relief as the Court may deem just and proper.

## COUNT III
## SEX DISCRIMINATION IN VIOLATION OF
## NJLAD – HOSTILE WORK ENVIORMENT

71. Plaintiff re-alleges and incorporates all allegations contained within Paragraph 1 through 56, above, as if fully set forth herein.

72. Plaintiff is a member of a protected class due to her complaints in regards to the ongoing sex discrimination and because she found Daniel Straus' openly romantic relationship with one of his subordinates to be highly offensive/inappropriate given the preferential treatment she was being given over her and participated in an investigation regarding same.

73. Based on the described conduct above, Plaintiff was discriminated against subjected to a hostile work environment based on her sex.

74. The above described retaliatory conduct was not welcomed by Plaintiff and was motivated by Plaintiff's sex.

75. The conduct by Straus and other employees of Defendants was so severe and pervasive that a reasonable person would find the environment to be hostile and unwelcoming.

76. Plaintiff's wages and benefits were impacted and Plaintiff's work environment was adversely impacted due to the pervasive and severe conduct by Defendants and its agents.

77. Defendants knew or should have known of the hostile work environment.

78. The above hostile workplace environment was done by Defendants with a reckless disregard for Plaintiff's rights under state law.  As a direct and proximate result of the Defendants' conduct described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

### COUNT IV
### RETALIATION IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION ("NJLAD")

79. Plaintiff re-alleges and adopts paragraph 1 through 56 as though fully set forth herein.

80. Plaintiff is a member of a protected class under the NJLAD because she engaged in protected activities.

81. Plaintiff engaged in protected activity when he complained to Defendants regarding disparate treatment based on her age which resulted in discriminatory treatment and her eventual termination. Plaintiff further engaged in protected activity when she brought to light the

inappropriate relationship between Mr. Straus and Ms. Vazquez which was providing Ms. Vazquez with preferential treatment over her as well as retaliation from Defendants for discussing same in addition to Ms. Vazquez's illegal activities on behalf of Defendants.

82. Plaintiff's supervisors and Defendants' corporate officers' treatment of Plaintiff became worse after Plaintiff's complaints of age and sex discrimination.

83. Shortly thereafter, Plaintiff was then terminated for her complaints of age and sex discrimination. Thus, there is a close temporal proximity and a sufficient causal connection between Plaintiff's complaint regarding age and sex discrimination and her termination.

84. By the conduct described above, Defendants engaged in unlawful employment practices and retaliated against Plaintiff because she engaged in protected activities by reporting the discriminatory conduct based on her age and sex discrimination and the hostile work environment which the conduct was causing.

85. Defendants had, with malice, or reckless indifference, violated the dictates of the New Jersey Law Against Discrimination, by intentionally discriminating against Plaintiff because of her age.

86. Defendants had actual or constructive knowledge of the discriminatory conduct.

87. Defendants' acts and omissions negatively affected one or more terms, conditions and/or privileges of Plaintiff's employment.

88. Defendants' conduct violated Plaintiff's right to be free from discrimination as guaranteed by the NJLAD.

89. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendants, which have caused and continue to cause irreparable harm.

90. Defendants' violations of the NJLAD were willful.

91. As a direct and proximate result of the discrimination described above, Plaintiff has suffered damages including loss of employment, income, benefits, distress, humiliation, and embarrassment.

92. Plaintiff is entitled to recover her attorneys' fees and costs pursuant to the NJLAD.

**WHEREFORE**, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

   a. Back pay and benefits;

   b. Interest on back pay and benefits;

   c. Front pay and benefits and/or lost earning capacity;

   d. Compensatory damages for emotional pain and suffering;

   e. Punitive damages;

   f. Injunctive relief;

   g. Prejudgment interest;

   h. Costs and attorney's fees; and

   i. Such other relief as the Court may deem just and proper.

## COUNT V
## DISCRIMINATION BASED ON AGE IN VIOLATION OF THE ADEA

93. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1–56 above.

94. Plaintiff is a member of a protected class because Plaintiff is over forty years old.

95. At all relevant times throughout his employment, Plaintiff was qualified for the position she held with Defendants.

96. After Plaintiff's termination, Plaintiff was replaced by a younger employee(s).

97. Defendant's acts were intentional, with malice, and in violation of Plaintiff's protected civil rights under the ADEA.

98. Plaintiff has been damaged and continues to be damaged by Defendant's illegal conduct and discriminatory actions based on her age.

99. The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal and state laws. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

**WHEREFORE**, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

   a. Back pay and benefits;

   b. Interest on back pay and benefits;

   c. Front pay and benefits;

   d. Liquidated damages;

   e. Compensatory damages for emotional pain and suffering;

   f. Injunctive relief;

   g. Prejudgment interest;

   h. Costs and attorney's fees; and

   i. Such other relief as the Court may deem just and proper.

## COUNT VI
## DISCRIMINATION BASED ON SEX/GENDER IN VIOLATION OF TITLE VII

100. Paragraphs 1 through 56 are realleged and incorporated herein by reference.

101. Plaintiff is a member of a protected class due to her sex/gender (female).

102. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against plaintiff on the basis of her sex in violation of Title VII.

103. Defendant knew or should have known of the discrimination.

104. The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

**WHEREFORE**, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

a. Back pay and benefits;

b. Interest on back pay and benefits;

c. Front pay and benefits;

d. Compensatory damages for emotional pain and suffering;

e. Injunctive relief;

f. Prejudgment interest;

g. Costs and attorney's fees; and

h. Such other relief as the Court may deem just and proper.

## COUNT VII
## RETALIATION IN VIOLATION OF TITLE VII BASED ON SEX/GENDER

105. Paragraphs 1 through 56 are realleged and incorporated herein by reference.

106. Plaintiff is a member of a protected class under Title VII because of her sex/gender and because she engaged in protective activities.

107. Plaintiff engaged in protected activity when she complained to Defendants that other female employees were receiving preferential treatment over her which effected the terms and conditions of her employment due to such female employee's romantic relationship with the CEO/Owner of Defendants. Plaintiff further participated in an investigation regarding such romantic relationship between Defendants' CEO/Owner and a female employee of Defendants resulting in retaliation by Defendants towards Plaintiff including a demotion and her termination of employment.

108. Defendant retaliated against Plaintiff for the exercise of the rights afforded to her under Title VII.

109. Plaintiff was terminated because she engaged in protected activity. There is sufficient causal connection between Plaintiffs' protected activity and her termination due to the close temporal proximity between her protected activity and her termination as well as the related events which took place which are described in greater detail above.

110. Defendant knew, or should have known, of the retaliation, discrimination and harassment that Plaintiff was subjected.

111. At all times material hereto, Defendant acted with malice and reckless disregard for Plaintiff's state and federally protected rights.

**WHEREFORE**, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

   a. Back pay and benefits;

   b. Interest on back pay and benefits;

   c. Front pay and benefits;

   d. Compensatory damages for emotional pain and suffering;

  e. Injunctive relief;

  f. Prejudgment interest;

  g. Costs and attorney's fees; and

  h. Such other relief as the Court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, DAWN-MICHELE BLALOCK, demands judgment against Defendant, PARTNERS PHARMACY, L.L.C., a Domestics Limited Liability Company ("PARTNERS"), ASCEND HEALTH LLC, a Domestics Liability Company ("ASCEND") and CARE ALTERNATIVES, INC., a Domestic Profit Corporation d/b/a ASCEND HOSPICE ("CARE ALTERNATIVES") and DANIEL STRAUS, individually, ("Mr. Straus") or collective hereby referred to as "Defendants"), for back pay, front pay in lieu of reinstatement, compensatory damages, punitive damages, prejudgment interest, punitive damages, attorney's fees, costs of this action, and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: this 17th day of July, 2023.

            Respectfully submitted,

            **/s/Andrew R. Frisch**
            Andrew R. Frisch, Esq.
            Florida Bar No.: 27777
            Gregory R. Schmitz, Esq.
            (*pro hac vice forthcoming*)
            Morgan & Morgan, P.A.
            8151 Peters Road, Suite 4000
            Plantation, FL 33324
            Direct Tel.: (954) 318-0268
            Facsimile: (954) 327-3013
            Email: afrisch@forthepeople.com
               gschmitz@forthepeople.com

mbarreiro@forthepeople.com
*ATTORNEY FOR PLAINTIFF*